Docket Number 25-

D.C. No 3:24-cv-00568-JSC
NORTHERN DISTRICT OF CALIFORNIA,
SAN FRANCISCO

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

BRIAN CLARK, individually and on Behalf of All Others Similarly Situated,

*Plaintiff – Petitioner,*

v.

VIA RENEWABLES, INC, F/K/A SPARK ENERGY, INC.,

*Defendant-Respondent.*

_____

**Plaintiff-Petitioners Petition for Permission to Appeal Certification Decision Pursuant to Federal Rule of Civil Procedure 23(f)**

_____

petition FROM THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, THE HONORABLE JACQUELINE SCOTT CORLEY, UNITED STATES DISTRICT JUDGE

JUSTIN PRATO ESQ.
CHRISTOPHER REICHMAN ESQ.
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, California 92123
619-886-0252 – Telephone
619-241-8309 – Facsimile

Email- Jmprato@gmail.com

*Attorney for Plaintiff-Petitioner, Brian Clark*

# TABLE OF CONTENTS

I.  PRELIMIANRY STATEMENT . . . . . . . 1

II.  QUESTION PRESENTED . . . . . . . . 1

III. FACTUAL BACKGROUND . . . . . . . 2

IV.  PROCEDURAL BACKGROUND . . . . . . 4

V.  STANDARD OF REVIEW . . . . . . . . 6

VI.  ARGUMENT . . . . . . . . . . 6

1.  Respondent did not present sufficient evidence to show by a
preponderance of the evidence that it had signed written consent from
either Plaintiff individually nor the class generally. . . . 6

2.  The District Court erred in finding that the Petitioner was not an
adequate or typical representative because he alleged that he did not
visit any of the Respondent's websites to put in his information as to
both the narrow and broad sub-classes. . . . . . 10

3. The District Court erred in finding that common issues do not
predominate due to whether a person visited or did not visit a website
or the differing language on the website. . . . . . 16

VII. RELIEF REQUESTED . . . . . . . . 18

i

# TABLE OF AUTHORITIES

**Supreme Court**

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) . . . . 8


**Circuit Courts**

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) . . . 6

*Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021) . . 13-14

*O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018) . 14-15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

    31 F.4th 651 (9th Cir. 2022) . . . . . . 6,7,10

*True Health Chiropractic, Inc. v. McKesson Corp.*,

    896 F.3d 923 (9th Cir. 2018) . . . . . 1,7,9,10,16-17

*Van Patten v. Vertical Fitness Group*, LLC, 847 F.3d 1037 (9th Cir. 2017) . 7,11


**District Courts**

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019). 15

**Other Authorities**

47 U.S.C. § 227 . . . . . . . . . . . *ibid*

47 C.F.R. § 64.1200 . . . . . . . . . 3,7,11

F.R.C.P. 23 . . . . . . . . . . . 1,10,15-18

Black's Law Dictionary (10th ed. 2014) . . . . . . 7

## I.    PRELIMINARY STATEMENT

This Petition is brought by the Plaintiff-Petitioner, Mr. Brian Clark ("Mr. Clark" or "Petitioner"), who seeks to represent a putative class in the above titled action against the Defendant-Respondent, Via Renewables, Inc, F/K/A Spark Energy, Inc. ("Respondent") for alleged violations of the Telephone Consumer Protection Act of 1991 ("TCPA").  47 U.S.C. § 227.  As such, Petitioner brought the final motion for class certification on June 27, 2025, to certify a class of similarly situated persons against Respondent.  The Respondent opposed the motion and the District Court held a hearing.  The District Court then ruled against the Petitioner's motion for class certification stating that the Petitioner was not a typical or adequate representative and that individual issues predominated over class issues.  Petitioner now moves this Court for a petition to review the denial of the class certification under Rule 23(f).

## II.    QUESTION PRESENTED

Petitioner following the following questions presented:

1. Whether the Respondent presented evidence adequate under *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018) to meet the preponderance of the evidence standard for a consent affirmative defense;

2. Whether the District Court erred in finding that the Petitioner was not a adequate or typical representative because he alleged that he did not visit any of the Respondent's websites to put in his information as to both the narrow and broad sub-classes;

3. Whether the District Court erred in finding that common issues do not predominate due to whether a person visited or did not visit a website or the differing language on the website;

4. Whether the District Court committed any abuse of discretion in weighing Rule 23 factors or committed any clear error as to factual determinations.

### III.  FACTUAL BACKGROUND

Mr. Clark is a resident of Alameda in the State of California whose residential phone number is 510-316-9772. [Dckt No. 68-5].  Mr. Clark received ten (10) telemarketing calls from Defendant's agent, Energy BPO, Corp. ("Energy BPO"), from March 3, 2023 to March 21, 2023 on his residential phone. [Id].  In each of the ten (10) calls Mr. Clark received Defendant's agent, Energy BPO, left a voicemail message which stated the following, "Hello this is Michelle calling about your natural gas bill, I need you to call me back as soon as possible at 888-928-3199 thank you." [Id].  The voicemail calls obviously used a prerecorded

2

voice in each completely identical message transmitted to Mr. Clark. [Id]. None of the voicemail calls "state clearly the identity of the business, individual, or other entity that is responsible for initiating the call." [Id.], 47 C.F.R. § 64.1200(b)(1).[1] Mr. Clark, to determine who was calling, called the 888-928-3199 number and was connected to a line which said it was for "Spark Energy". [Id]. Mr. Clark's registered his residential phone number on the DNC Registry on or about August 27, 2019 and has kept in on the DNC Registry continuously since. [Id]. Mr. Clark then instituted this suit seeking class relief. [Dckt No. 1].

During litigation it was discovered that the Petitioner used an agent, Energy BPO, to make its telemarketing calls. [Dckt No. 78-3]. In order to Energy BPO to make the calls it received the numbers from Respondent. [Dckt No. 68-3]. Respondent claims the numbers come from online applications allegedly filled out by persons on the internet then transferred to the Respondent via their Acquire

_____

[1] The failure to properly identify the caller obviously violates 47 C.F.R. § 64.1200(b)(1), which requires all prerecorded calls, "[a]t the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call." Since there are some questions about how the private rights of action in 47 U.S.C. 227(b-c) relate to 47 C.F.R. § 64.1200(b)(1), Plaintiff strategically chose not to make this claim.

Crowd system, so that the information could be passed on to Energy BPO. [Dckt No. 78-3]. This information is allegedly logged by the Acquire Crowd software that creates a recreation of what the website saw at the time of the signup. [Id]. The alleged information from Mr. Clark came from a website called "bestamericansavings.com". [Id]. Mr. Clark claims that he never visited any website and that the information entered was not entered by him. [Dckt No. 68-5]. Mr. Clark also contends that any language on the website does not consist a consent nevertheless. Based on these facts Mr. Clark then filed his motion for class certification.

## IV.   PROCEDURAL BACKGROUND

The initial complaint in this case was filed in the District Court on January 30, 2024. [Dckt No. 1]. After preliminary issues were resolved and the Rule 26(f) report and scheduling order was filed, the Parties engaged in discovery. [Dckt No. 19]. Discovery concluded, and thereafter the Petitioner filed his Motion for Class Certification on December 16, 2024. [Dckt No. 37]. The Respondent filed their opposition to the Motion for Class Certification on January 15, 2025. [Dckt No. 42]. The Petitioner then filed his reply to the opposition on January 30, 2025. [Dckt No. 46]. A hearing was held on March 25 2025, and at the hearing the District Court believed that the defined class was insufficient, and then set an offer of proof to allow the Petitioner to amend his class definition.

[Dckt No. 54]. On April 24, 2025 the Petitioner submitted his offer of proof with a new class definition. [Dckt No. 57]. Respondent filed its response on May 8, 2025. [Dckt No. 62]. A hearing was set for May 27, 2025 at which time the District Court heard argument and then ruled that it would allow the Petitioner to file a Second Motion for Class Certification. [Dckt No. 65]. Petitioner filed his Second Motion for Class Certification with the amended class definition on June 27, 2025. [Dckt No. 68]. Petitioner in the Second Motion for Class Certification provided two new defined classes, one which was narrowed to only include calls that came from information obtained from bestamericansavings.com and limited to calls made by Energy BPO, and a larger class which included calls that came from information obtained from any of Respondent's agent's websites and limited to calls made by Energy BPO. [Id]. The Respondent filed its opposition on August 1, 2025. [Dckt No. 78]. Petitioner then filed his reply on August 15, 2025. [Dckt No. 81]. A hearing was held on October 16, 2025 and the Court took the issue under submission. [Dckt No. 84].

On October 21, 2025, the District Court issued an order denying the Petitioner's Second Motion for Class Certification on the grounds that the Petitioner was not an adequate or typical representative for the class due to his not having visited the website, and that commons issues don't predominant

because Petitioner did not provide any method to show if other persons visited the websites ("Order"). [Order, Dkct No. 85, p. 11-12.] The Petitioner believes that this decision is a clear error and requests that the Ninth Circuit grant Petitioner's request for review of that order under Rule 23(f).

## V.    STANDARD OF REVIEW

Recognizing that denying or granting a class certification motion is often the defining movement in class actions, Rule 23(f) provides the Court with broad discretion to review certification decisions on an interlocutory basis. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) ("*Chamberlan*"). The non-exhaustive list of relevant factors for the Court to consider are; 1) the possible case-ending effect of the decision; (2) an erroneous ruling; and (3) development of the law on class certification. *Id*.

## VI.    ARGUMENT

**1. Respondent did not present sufficient evidence to show by a preponderance of the evidence that it had signed written consent from either Plaintiff individually nor the class generally.**

"[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

6

31 F.4th 651, 664 (9th Cir. 2022) ("*Olean*"). However, Plaintiff bears no initial burden as to affirmative defense issues in certification. "Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Group*, LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) ("*Van Patten*"). Defendant "bears the burden of proof on the issue of consent" as to class certification analysis. *True Health Chiropractic, Inc. v. McKesson Corp.,* 896 F.3d 923, 931 (9th Cir. 2018)("*True Health*"). And the burden of proof is both the burden of production and the burden of persuasion. BURDEN OF PROOF, Black's Law Dictionary (10th ed. 2014). So under the *Olean* burden of persuasion, Defendant's burden is to introduce evidence proving Plaintiff individually and/or the rest of the class gave permission to be called by a preponderance of the evidence where Defendant is trying to show a difference between Plaintiff's claims and the class claims. The TCPA regulations on permission as an affirmative defense unequivocally require that: "Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." 47 C.F.R. § 64.1200(c)(2)(ii).

Respondent has never yet produced a signed, written consent agreement between a single consumer and a single seller. Respondent only presented

7

"evidence" through its unauthenticated Acquire Crowd screen captures that some unknown persons entered their information into one of Respondent's contractor's websites. The screen captures do not actually show any consent language at the time of signing up. And the websites are owned by third parties, so the agreement is not between the seller and the consumer. And, finally, the websites are consent farming purporting to obtain consent to calls not from the one seller/Respondent here and a consumer but between the consumer and literally hundreds of sellers, even though again the websites are not actually owned by any of the sellers. This is not evidence of a permission/consent that meets the TCPA requirements.

Furthermore, the Respondent did not provide admissible evidence in this case either because Respondent did not own or manage the consent-farming website bestamericansavings.com, and is not competent to testify as to what alleged consent language was or was not on the site. Class certification requires admissible evidence. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016). The Respondent simply relied on a declaration from their employee, Mr. Astorga, that relies on vague and generalized statements concerning the alleged consent language that may or may not have been on the website his company did not own, manage nor control. [Dckt. No. 78-3]. Where the required evidence is the signed writing, and certification requires admissible evidence, a vague and generalized affidavit simply will not do, and since Mr. Astorga does not have direct

8

personal knowledge of the Acquire Crowd website or software his testimony is insufficient to authenticate such evidence. This problem is hugely exacerbated by the fact that one of Respondent's third party 'verifiers' captured information at the time it was entered and produced allegedly exact recreation videos of what the website looked like when the information was entered and all but one of those produced into evidence did not show any permission/consent language whatsoever. [Dckt. No. 78-7].

The Court's order denying class certification did not address the authentication problem, and more concerningly applied some undefined burden of persuasion less than preponderance of the evidence to Respondent's affirmative defense claims to defeat certification. [Order, Dkct No. 85, p. 8-9]. The Court's order and hearing transcript appears to say that a defendant only needs to produce some small amount of evidence, whether admissible or not, possibly showing some affirmative defense issue and then somehow the burden shifts back to the plaintiff because after stating a defendant bears the burden of proof for affirmative defenses the district court backtracked and said, "Plaintiff bears the burden of proving class certification is appropriate, and 'the burden of proving consent strongly affects the analysis.'" [Id., quoting *True Health*]. But True Health is quite clear that the burden of proof which includes the burden of persuasion is on a defendant for affirmative defenses. The District Court's Order and oral argument comments

9

appear to treat affirmative defenses as a sort of rebuttable presumption where all a defendant needs to do is provide some small amount evidence, admissible or not, to shift the burden back to the plaintiff. This does not comport with this Court's holdings in *Olean* and *True Health*.

We respectfully submit that the failure to require Respondent to produce evidence meeting the preponderance of the evidence standard for their affirmative defense is error which supports granting the petition under Rule 23(f)'s erroneous ruling standard. In addition, this issue also goes toward the Rule 23(f) factor in granting the petition for development of the law on class certification. The Court's ruling on this issue can reinforce or clarify the burden of proof, including burden of persuasion, that lies on a defendant wishing to assert affirmative defenses as breaking class-wide treatment because they would apply differently to different parts of the class or the representative. The Court should grant this petition.

**2. The District Court erred in finding that the Petitioner was not an adequate or typical representative because he alleged that he did not visit any of the Respondent's websites to put in his information as to both the narrow and broad sub-classes.**

The District Court's denial of class certification stems in part from from Mr. Clark's testimony that he never visited the bestamericansavings.com website or

10

any other website allegedly giving permission/consent to Respondent to call him. The District Court Order specifically states that because Mr. Clark never visited the bestamericansavings.com website he would not have standing the challenge the language on the website as he did not see that language. [Order, p. 10]. However, this distinction is irrelevant to the prima facie case and to the permission/consent defense. The elements of the DNC Registry violation are simple: 1. transmit a call, 2 for telemarketing purposes, 3. to a residentially subscribed number, 4. on the DNC Registry. 47 C.F.R. § 64.1200(c)(2). The elements of a pre-record message violation are equally simple; 1. initiate, 2. a telemarketing call, 3. to a residentially subscribed number, 4. using an artificial or recorded voice to deliver a message. 47 U.S.C. § 227(b)(1)(B). Nothing about visiting or not visiting any website is relevant to any of the prima facie elements of either cause of action. All that matters is if a call was transmitted to a number on the DNC Registry or with use of an artificial or recorded voice. Why a defendant is calling the person, whether through a cold call, an alleged lead, or any other reason is irrelevant to the prima facie case, so the case is consistent class-wide as to the prima facie elements, which could require the bulk of the proof at trial since they are not admitted.

Permission/consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten*, 847 F.3d at 1043. In this case the DistErict Court surmises that since Mr.

11

Clark did not visit bestamericansavings.com website he would not have standing the challenge the language on the website. However, this is a misunderstanding of the issue. The question for a plaintiff is if there was a call in violation of the TCPA, i.e. meets the prima facie case, then the question for a defendant is whether it can prove it has a signed written consent meeting the TCPA regulations. Only after a defendant bears its affirmative defense burden could the case turn back to plaintiff and any claims and evidence he has responding to the consent defense. But where a defendant cannot meet its burden of proof to show a valid consent, there simply is no defense requiring a response. It does not matter why there is no consent, whether it is because the consent is not legally valid, the consent was not signed, the consent was not provided by the individual, but entered by another third party, *et cetera*. So long as defendant cannot present admissible evidence of a permission/consent that meets the objective legal requirements, it is not present and is no defense to the prima facie case.

The District Court's position that that since Mr. Clark did not visit bestamericansavings.com website he would not have standing the challenge the objective legal sufficiency of the language on the website is incorrect. It is the defendant, not the plaintiff who must show the objective legal sufficiency of its alleged consent language to meet its burden of proof. By the District Court's logic, since Mr. Clark did not visit bestamericansavings.com website he would not be

allowed to challenge whether Respondent met its burden to prove it has an objectively legally sufficient permission/consent language in the first place. This circumstance does not make sense as it is a defendant's burden to prove consent, thereby meaning, it is the defendant's burden to not only prove that the consent in fact does come from the person whom is alleged to have consented, but it is a defendant's burden to prove that any such consent is in fact legally sufficient. So, Mr. Clark does not need personal subjective standing to challenge the objective legal sufficiency of the consent language or whether hiding the hundreds of names of companies one is giving supposedly 'express' permission to meets the objective reasonable person standard because it is Respondent's burden, not Mr. Clark's, to show the purported consent is legally sufficient.

In its Order, the District Court relies on *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021) ("*Lawson*"). In that case this Court found that a plaintiff that opted out of an arbitration agreement could not challenge the sufficiency of the agreement for those that opted in on unconscionability grounds. *Id*. However, *Lawson* case is distinguishable from this situation due to the lack of explicit TCPA requirements the defendant must show in the first place and the lack of subjective factor issues. First, procedural unconscionability in arbitration clauses is highly complex and very fact specific and requires inquiry into the relative bargaining power of the parties and other subjective or potentially subjective issues.

13

Second, and more importantly, in the *Lawson* case invoking an arbitration clause is not an affirmative defense and the burden shifting to argue unconscionability is very different. An arbitration clause is not an affirmative defense, merely a venue switching device. To invoke it a defendant need only prove under basic contract law it has an arbitration clause in a contract mutually agreed to by both parties. Unconscionability is a defense to the arbitration clause invoked by the plaintiff and not the defendant who asserted the arbitration clause so the burden of proof for unconscionability is on the plaintiff and not the defendant. One cannot even reach unconscionability without finding the arbitration clauses were included in binding agreements, so the plaintiff in Lawson, who revoked the underlying agreement cannot even reach unconscionability for those who did not. The difference is that the burden falls on plaintiff for unconscionability after the contracts are found otherwise valid in Lawson, whereas here the burden to prove up a legally valid TCPA permission/consent in the first place falls on the defendant in this case and plaintiff can attack that showing on any objective legal grounds.

Third, the *Lawson* decision is expressly limited because the arbitration agreements at issue there, which all but two of the delivery drivers signed, contained an express waiver of the right to participate in class actions. *Id*. *Lawson* relied on *O'Connor v. Uber Technologies, Inc*., 904 F.3d 1087, 1094-95 (9th Cir.

14

2018), where similarly the arbitration clauses all had class action waivers as well as gave the right to decide the enforceability of the arbitration clauses to the arbitrator and thus ruled a district court opinion as to arbitrability and enforcement of the class action waivers to certify a class was reversed because the question, "was designated to the arbitrator." These very arbitration-specific issues are simply not present in this case where no class members waived the right to class action or to the court deciding enforcement.

In its Order, the District Court also relies on *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019) as illustrative as well. In that case the district court found that there was no adequacy or typicality between the class representative and the class members because the class representative did not visit the offending website and did not agree to an arbitration clause therein as other class members arguably did. *Id*. However, *Berman* just like *Lawson*, turns on issues of arbitration clauses which Plaintiff did not sign which change how the burden of proof works. *Id*.

As shown above, the District Court's order contains clear errors and thus meets the Rule 23(f) standard for review by this Court because the ruling below was legally erroneous. However, the Rule 23(f) factor in granting the petition for development of the law on class certification is also supported in that ruling on this case can provide clarity as to the burden of proof—including the burden of

15

persuasion—being on a defendant to show affirmative defenses would apply in a class-breaking way. This is an important issue for TCPA representative actions, especially where the District Court did not apply the preponderance of the evidence burden of persuasion on the defendant here, and a ruling from the Court on the matter would be highly beneficial to litigation in class certification decisions generally.

**3. The District Court erred in finding that common issues do not predominate due to whether a person visited or did not visit a website or the differing language on the website.**

The District Court also found that individual issues would predominate the class and therefore the element of predominance was not met for largely the same reasoning discussed in section 2, above. [Order p. 12]. To the extent that this decision is based on the error above—i.e. there is a difference between a person who did not visit a website and those that did—the Petitioner relies on his arguments above. The District Court Order contends that this case is dissimilar to *True Health* because, regardless of whether the alternative broad or narrow class definitions are used, the permission/consent forms and language are too dissimilar to adjudicate class-wide. [Order, Dkct No. 85, p. 12]. However, this case is almost exactly like *True Health*, where this Court found similar consents could be easily adjudicated class-wide. All of the evidence submitted by the Respondent either

16

uses literally the exact same consent language and hyperlink to hide the fact the consent is being given to hundreds of sellers, or does not have the consent language on the screen shots, which would be fatal to any purported consent defense. [Dckt. No. 78-5;78-6;78-7]. Since Petitioner's proposed narrow class is limited to only the calls made to the numbers allegedly generated from bestamericansavings.com and all of Defendant's evidence confirms just one set of alleged consent language and hyperlinking therein, the present case for the narrow class definition is exactly the same as *TrueHealth* where the alleged consents are the same class-wide. For the broader alternative class definition, the Respondent in an inadmissible declaration from its employee Mr. Astorga tries to state that various other third-party websites he is not competent to testify about since he does not own or manage them are also used to consent-farm for other call centers, but Respondent did not produce any evidence showing those websites using different language. [Dckt. No. 78-3]. Thus, the narrow class definition would be entirely in line with *True Health* by Respondent's own evidence. And for the alternative broad class definition, Respondent did not carry its burden to show by a preponderance of the evidence that there are other purported consents applying to those class members which differ in any significant regard.

This issue is a clear error which supports granting the petition under Rule 23(f)'s erroneous ruling standard. In addition, this issue also goes toward the Rule

17

23(f) factor in granting the petition for development of the law on class certification as it would allow this Court to better establish the boundaries of the *True Health* case putting the burden of proof on defendants for affirmative defenses and the burden of persuasion therein to show that individual issues predominate.

## VII.   RELIEF REQUESTED

Petitioner respectfully requests that the Court grant the petition for interlocutory review of the District Courts Order denying class certification and after briefing and oral argument, reverse the Order and certify the Petitioner's class.

DATED: 11/04/2025                                    **PRATO & REICHMAN, APC**

    __/s/ Justin Prato Esq._____

By: Justin Prato Esq..

**Prato & Reichman, APC**

Attorneys for Plaintiff

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6, I state that I am not aware of any related case pending in this Court.


DATED: 11/04/2025                                    **PRATO & REICHMAN, APC**

                                                     __/s/ Justin Prato Esq._____
                                                     By: Justin Prato Esq..
                                                     **Prato & Reichman, APC**
                                                     Attorneys for Plaintiff

19

## CERTIFICATE OF COMPLIANCE

I hereby certify that this petition complies with the requirements of Circuit Rule 5-2(b) because it contains 4,874 words, which, when divided by 280 as provided by Circuit Rule 32-3, yields a page count of less than or equal to twenty pages.

DATED: 11/04/2025                                                  **PRATO & REICHMAN, APC**

                                                   __/s/ Justin Prato Esq._____
                                                   By: Justin Prato Esq..
                                                   **Prato & Reichman, APC**
                                                   Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2025, I electronically filed this petition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I also caused a copy of the petition to be served via electronic mail and hard copy mail to the following recipients:

BRITTANY ANDRES, ESQ
ERIC TROUTMAN, ESQ
TROUTMAN AMIN, LLP
400 Spectrum Center, Ste. 1550
Irvine, CA 92618
troutman@troutmanamin.com
brittany@troutmanamin.com

DATED: 11/04/2025                                **PRATO & REICHMAN, APC**

    __/s/ Justin Prato Esq._____
By: Justin Prato Esq..
**Prato & Reichman, APC**
Attorneys for Plaintiff

21

# APPENDIX

District Court Certification Order (October 21, 2025)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN CLARK,

    Plaintiff,

  v.

VIA RENEWABLES, INC.,

    Defendant.

Case No. 24-cv-00568-JSC

**ORDER DENYING RENEWED MOTION FOR CLASS CERTIFICATION**

Re: Dkt. No. 68

Plaintiff Brian Clark, on behalf of four proposed classes, alleges violations of the Telephone Consumer Protection Act ("TCPA").[1] (Dkt. No. 23.) Plaintiff contends his residential phone number is on the federal Do Not Call Registry and Defendant, Via Renewables, Inc., called his phone number ten times and left identical pre-recorded voice messages, all in violation of the TCPA. (*Id.* ¶ 7, 17-20.) The Court previously denied Plaintiff's motion for class certification without prejudice and ordered Plaintiff to make an offer of proof as to whether amendment of the class would be futile. (Dkt. No. 61.) Plaintiff made an offer of proof, and this renewed motion for class certification followed. (Dkt. No. 68.)

Having carefully reviewed the parties' briefing, and having had the benefit of oral argument on October 16, 2025, the Court **DENIES** the motion. Plaintiff has not shown his claims or defenses are typical of the class, that he is an adequate representative of the class, or that common issues of law or fact predominate.

//

//

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.  The Amended Complaint's Allegations**

"[Defendant] is engaged in a scheme to sell natural gas and energy services via cold calls to residential phone numbers on the protected federal Do Not Call Registry which [Defendant] calls without prior express written consent, through their agents and affiliates, using a pre-recorded message." (Dkt. No. 23 ¶ 7.) "[Defendant] calls various numbers in the United States to sell [Defendant]'s energy services without regard to whether those numbers are on the Do Not Call Registry or not, using a pre-recorded message regardless of whether the number is residential or not." (*Id.* ¶ 9.) Further, Defendant does not "check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance, nor confirm the number is not a residential number." (*Id.* ¶ 10.) Defendant conducts "cold calls" nationally "with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not." (*Id.* ¶ 11.)

Plaintiff is the only named plaintiff in this putative class action. His home phone number "has been tariffed as a residential line since he was assigned it by the phone company more than ten (10) years ago." (*Id.* ¶ 14.) On December 22, 2007, he "registered his residential line on the National 'Do-Not-Call' Registry," and maintained it on the Registry to the present day. (*Id.* ¶ 15.)

In March 2023, Defendant "made ten (10) calls to [Plaintiff's] home phone number," using various Caller ID numbers. (*Id.* ¶ 13.) For each call he "received a voice message that was from a 'Michelle' who was allegedly calling about [his] natural gas bill and requested return call to 888-928-3199." (*Id.* ¶ 17.) "The messages use nearly identical wording and the voice has the same monotone speaking structure in every message which shows that the calls were pre-recorded messages and not a call from a live person." (*Id.* ¶ 19.) Two days after the last of these calls, Plaintiff "called the 888-928-3199 number that was present in all of the voice messages and was immediately connected to [Defendant]." (*Id.* ¶ 20.)

**B.  How Defendant Claims It Obtains Consent**

Defendant's Vice President of Sales, Julio Astorga, attests Defendant uses two types of vendors.  The first type "operate websites where consumers may fill out forms and request to be

2

United States District Court
Northern District of California

contacted by [it]." (Dkt. No. 78-3 ¶ 8.)  Defendant's "contracts with [website] vendors require valid express written consent be provided." (Dkt. No. 78-3 ¶ 9.)  "These vendors do not just work for [Defendant] but with any number of other companies for whom they also generate consumer leads."  (*Id.* ¶ 10.)  Accordingly, "these vendors use hundreds of different URLs to acquire the lead information and forms sent to [Defendant].  Inbounds.com … is one such vendor.  Bestamericansavings.com is one such URL." (*Id.*)  Defendant receives and maintains this lead information through Active Prospect, an "online software repository for vetting and storing lead [data]." (Dkt. No. 42-3 6:8-10.)

For each consumer lead, Active Prospect stores a consent record called a 'TrustedForm.' (Dkt. No. 78-3 ¶ 14.) A TrustedForm script is installed on websites to track "[a]nything the visitor might be doing on that page." (Dkt. No. 78-11 at 6:25-7:1-2, 9:3-14.) The script "listens for events as they take place in the browser," like when "a consumer checks a box," "inputs … a form with their information," "move[s] their mouse[,] or click[s] on something." (Dkt. No. 68-7 at 11:13-17.) TrustedForm "compiles … a log of [these] events" with metadata about the transaction, including "a timestamp of when the lead was captured" and "the IP address of the person." (*Id.* at 8:15-19, 11:22.) Then, "TrustedForm will issue a certificate" containing this information so "whoever receives that lead has independent verification of when and where that consumer filled out the form, and also gives them a visual … session replay of what happened[.]" (*Id.* at 7:6-12.)

A session replay is a visual rendering of "what the consumer saw on that page, [and] how they interacted with that page." The replay is "a best guess in a visualization of data points that [TrustedForm] obtained." (*Id.* 13:9-11.) "This visual rendering is helpful for demonstrating approximate times that it took for a consumer to information[.] [I]t's useful to tell us what information was entered, what key strokes took place, and what the websites looked like, but might not be 100 percent accurate in terms of tracking exactly what the direction that the mouse moved at any given moment[.]" (*Id.* 13:18-24.) Additionally, in some instances, the visual rendering will not show the customer clicking the 'register' button to submit the completed form even though the TrustedForm script logged the customer doing so. (Dkt. No. 68-7 at 15:3-25, 16:1-18.)

3

The second type of vendor Defendant works with is "a call center vendor" that "make[s] calls to consumers who have consented to receive calls." (Dkt. No. 78-3 ¶ 12.)

> One such vendor is Energy BPO, Corp. ('Energy BPO'). All calls made by Energy BPO were contractually obligated to be made with consent—calls could not have been placed by Energy BPO unless a consent record was first received by [Defendant], stored in its account with Active Prospect, and then transferred to Energy BPO.

(*Id.* ¶ 13.) Indeed, Energy BPO, attests "Energy BPO Corp. would only attempt to sell [Defendant's] products from phone numbers that were provided by [Defendant]." (Dkt. No. 68-3 ¶¶ 3-5.)

## C. Evidence as to Plaintiff's Consent

Defendant asserts Plaintiff completed a webform providing his consent to be contacted. "On March 3, 2023, Plaintiff's name and contact information was submitted via a webform on BestAmericanSavings.com." (Dkt. No. 78-3 ¶ 21.) Defendant contends this webform contains the following language below the "Register" button:

> By submitting this form, I expressly consent to be contacted by any partner in the AcquireCrowd Partner Network with materials for services via direct or electronic mail, phone calls to the number provided, text/SMS messages via automatic or automated dialing system(s), and pre-recorded messages. Consent is not a condition of purchase and may be revoked at any time.

(Dkt. No. 78-6 at 2.)[2] "As a result of that webform submission, [Defendant] transmitted the lead record to Energy BPO, who made the challenged calls to Plaintiff." (Dkt. No. 78-3 ¶ 21.)

"Plaintiff's webform submission included an Active Prospect TrustedForm, including a Certificate of Authenticity, Event Log, [and] Session Replay[.]" (Dkt. No. 23.) The Certificate of Authenticity attached to Plaintiff's webform describes a 46-second visit to the website https://www.bestamericansavings.com at 9:56 am on March 3, 2023 and contains Plaintiff's date of birth. (Dkt. 78-4; Dkt. No. 79-1 at 1, 3.) The Certificate also says the visitor used a Google Chrome browser on a Windows 7 operating system and did so from Lancaster, California. (*Id.*)

---

[2] Plaintiff objects to Exhibit A, Dkt. No. 78-2, filed in support of Defendant's Opposition brief. (Dkt. No. 81-2.) This order does not rely on this exhibit, so the Court SUSTAINS Plaintiff's objection, notwithstanding Plaintiff's failure to comply with N.D. Cal. Civil Local Rule 7-3(c) ("Any evidentiary or procedural objections to the opposition must be contained within the reply brief or memorandum").

The session replay of the website visit displays a completed form with contact information, including a first and last name, email address, street address, phone number, and date of birth. (*Id.*) A screenshot of the replay contains the name briansean clark and Plaintiff's residential phone number. (*Id.*; *see* Dkt. No. 1 ¶ 13).

Plaintiff swears he did not visit the bestamericansavings.com website. In his declaration, Plaintiff attests: "I never gave anyone from [Defendant] or Energy BPO permission to call me, and I did not fill out any online inquiry form, as they allege." (Dkt. No. 68-4 ¶ 16.) At his deposition, Plaintiff testified under oath he "never visited the website" and has "never seen the privacy policy" on the website. (Dkt. No. 78-12 at 16:24-25, 17:1-8.)

### D. Plaintiff's First Motion for Class Certification

Plaintiff asserts one cause of action for two different TCPA violations: (1) calling numbers on the national Do-Not-Call Registry ("DNC Registry" or the "Registry"); and (2) making prerecorded marketing calls to residential numbers. (Dkt. No. 23 ¶ 5.) Plaintiff initially moved to certify the following nationwide subclasses:

> **Subclass No. 1 ("DNC Subclass")**
> All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from January 30, 2020 to the present, including up to and through trial.

> **Subclass No. 2 ("Prerecord Subclass")**
> All persons and entities located within the United States of America to whose residential telephone line Defendant and/or its agents transmitted a call using a prerecorded voice without prior express written consent from the called party at any time from January 30, 2020 to the present, including up to and through trial.

(Dkt. No. 37-1 at 12.) Defendant opposed certification (Dkt. No. 42) and sought to exclude Plaintiff's expert's report under Federal Rule of Evidence 702. (Dkt. No. 43-3.) Defendant's principal contention was that Plaintiff's class definitions, which included the consent issue, created improper fail safe classes. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods*

United States District Court
Northern District of California

5

*LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (holding a court may not "create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct.") (citing *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016)).

On March 25, 2025, the Court heard argument on Plaintiff's motion, focusing primarily on the consent issue and whether Plaintiff's definitions created fail safe classes that could be redefined without being overbroad. At the hearing, the Court noted that although consent in a TCPA case is an affirmative defense, Plaintiff "actually pled the lack of consent in [his] class definition." So, Plaintiff had the burden of proving class certification was warranted notwithstanding the consent issue. (Dkt. No. 61 at 3:20-4:2.)  Plaintiff argued the website consent was insufficient as a matter of law as to all putative class members, but he provided no evidence— or law—to support this assertion. (*Id.* at 4:25-5:7.)  Defendant complained Plaintiff attacked the consent as to only one of many websites Defendant uses to obtain consents— Bestamericansavings.com—even though Defendant had advised Plaintiff it uses many websites. (*Id.* at 5:14-6:11.) The Court concluded that based on the then-current record Plaintiff had not met his class certification burden given the consent issue. (*Id.* at 7:25-8:4.)  Plaintiff then offered to "delete the class definition part about the defense," (Dkt. No. 61 at 12:2-4.), but the Court was skeptical this deletion would resolve the issue. Further, the Court observed: "I don't know how you would [define a class without requiring consent]. I don't know. I don't think you can just take it out because then we might have a class that is 95 percent of people who don't have any standing; right?" (Dkt. No. 61 at 9:11-20.)  The Court further cautioned Plaintiff's unique defense to consent—that someone else must have completed Defendant's consent form given he never visited Bestamericasavings.com—may make him atypical for purposes of Rule 23. (*Id.* at 10:5-9.)

Accordingly, the Court ruled: "I'm going to deny the motion for class certification for the reasons we've just discussed. And what I want you to do is then come make an offer of proof as to what your new class definition would be and how you believe it would satisfy." (*Id.* at 12:12-16.) Following Plaintiff's offer of proof, the Court permitted Plaintiff to file the pending renewed motion for class certification.

//

United States District Court
Northern District of California

United States District Court
Northern District of California

### E. Plaintiff's Renewed Motion for Class Certification

Plaintiff's renewed motion offers four sub-classes. Plaintiff outlines two amended 'broad' sub-classes and, in the alternative, two new 'narrow' sub-classes.

**Broad DNC Sub-Class No. 1**
*All persons within the United States of America who have or had a residentially subscribed telephone number registered on the National Do-Not-Call Registry and whose residentially subscribed number appears on call logs showing Energy BPO Corp. ("Energy BPO") outbound calls with campaign designations showing those numbers were called to sell Spark Energy services (e.g. Ex. X (convoso), column R, Campaign Name of "Spark Energy – CA", or Ex. X (export), column F Campaign ID of "1005" or "Spark_1005") to whose telephone number Energy BPO transmitted two or more telemarketing calls in one calendar year at any time from January 30, 2020 to the present, including up to and through trial.*

**Broad Prerecord Sub-Class No. 2**
*All persons within the United States of America who have or had a residentially subscribed telephone number and whose residentially subscribed number appears on call logs showing Energy BPO calls with campaign designations showing those numbers were called to sell Spark Energy services (e.g. Ex. X (convoso), column R, Campaign Name of "Spark Energy – CA", or Ex. X (export), column F Campaign ID of "1005" or "Spark_1005") to whose telephone number Energy BPO transmitted a prerecorded message at any time from January 30, 2020 to the present, including up to and through trial.*

**Narrow DNC Sub-Class No. 1**
*All persons within the United States of America who have or had a residentially subscribed telephone number they registered on the National Do-Not-Call Registry and whose residentially subscribed number appears on **both** call logs showing Energy BPO Corp. ("Energy BPO") outbound calls (e.g., Convoso call logs) **and** the Acquire Crowd lead records showing the phone number and other lead information was allegedly garnered from the www.bestamericansavings.com website (e.g., column N) to whose telephone number Energy BPO transmitted two or more telemarketing calls in one calendar year at any time from January 30, 2020 to the present, including up to and through trial.*

**Narrow Prerecord Sub-Class No. 2**
*All persons within the United States of America who have or had a residentially subscribed telephone number and whose residentially subscribed number appears on **both** call logs showing Energy BPO Corp. ("Energy BPO") outbound calls (e.g., Convoso call logs) **and** the Acquire Crowd lead records showing the phone number and other lead information was allegedly garnered from the www.bestamericansavings.com website (e.g. column N) to whose telephone number Energy BPO transmitted a prerecorded message at any time from January 30, 2020 to the present, including up to and through trial.*

(Dkt. No. 68-1 at 11-12.) The "broad" class definitions mirror Plaintiff's earlier definitions, except the new definitions reference call logs disclosed by Defendant and exclude the "without prior express written consent" language. (*Id.*; Dkt. No. 37-1, at 12.) The "narrow" class definitions contain additional language: "the Acquire Crowd lead records show[] the [class member's] phone number and other lead information was allegedly garnered from the www.bestamericansavings.com website[.]" (Dkt. No. 68-1 at 11-12.) The narrower class definitions limit the class to people whose leads were garnered from the bestamericansavings.com website, as opposed to other URLs Defendant's vendors use.

## DISCUSSION

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). "Before it can certify a class, a district court must be 'satisfied, after a rigorous analysis, that the prerequisites' of both Rule 23(a) and 23(b)(3) have been satisfied." *Olean Wholesale Grocery* Coop., 31 F.4th at 664. Under Rule 23(a), a case is appropriate for certification if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[P]laintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)," and that proof must be by a preponderance of the evidence. *Olean Wholesale Grocery Coop.*, 31 F.4th at 664.

### A.    Defendant's Consent Defense and Class Certification

Under the TCPA, "express consent" is an affirmative defense to a TCPA claim alleging unsolicited phone calls. *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). So, Defendant "bears the burden of proof on the issue of consent." *True Health*

8

*Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018).  Plaintiff bears the burden of proving class certification is appropriate, and "the burden of proving consent strongly affects the analysis." *Id.*  In deciding if class certification is warranted, a court considers the consent defenses the defendant "has advanced and for which it has provided supporting evidence." *Id.* at 932.

Here, Defendant asserts it requires its vendors to obtain consent before contacting people, and Defendant tailors its evidence to show the consent of Plaintiff, members of the broad sub-classes, and members of the narrow sub-classes. Broadly speaking, the evidence consists of webforms and session replays where class members purportedly entered their contact information and consented to be contacted by Defendant's vendors. To show Plaintiff's consent, Defendant produced the webform with Plaintiff's contact information that Defendant's vendors received, metadata about when and where the website was visited, and a session replay of the website visit. (Dkt. No. 78-3 ¶¶ 21-24; Dkt. No. 78-4; Dkt. No. 79-1). Defendant also produced webforms from the same website, but on different dates. Plaintiff's purported visit occurred on March 3, 2023, so Defendant produced webforms from January 16, 2023 and March 3, 2023 to show the website had consent language at the time. (Dkt. No. 78-5, Dkt No. 78-6.)

As to the broad sub-classes, Defendant claims its vendors obtained leads through "hundreds" of different URLs which had "drastically" different consent language. (Dkt. No. 78-3 ¶¶ 10, 31.) Thus, to show consent of the broad sub-classes, Defendant produced Certificates of Authenticity from another website Defendant's vendors used, freesamplesprousa.com. (Dkt. No. 78-3 ¶¶ 31-33; Dkt. No. 78-9.)  Finally, the narrow sub-classes consist solely of people whose information was garnered from the bestamericansavings.com website, and "[d]epending on the date an individual visited bestamericansavings.com, there are multiple versions of the webform they would have encountered." (Dkt. No. 78-3 ¶ 29.) Thus, Defendant produced an example of what consent language the website displayed on September 15, 2022 and metadata for other signups on the website. (Dkt. No. 78-7 at 3-4).

//

//

9

### B. Typicality and Adequacy

"[T]he typicality and adequacy inquiries tend to significantly overlap." *Woods v. Vector Mktg. Corp.*, 2015 WL 5188682, at \*12 (N.D. Cal. Sept. 4, 2015). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks and citation omitted). Typicality is not met when the named plaintiff is "subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Similarly, adequacy of representation requires the named plaintiff be able to "prosecute the action vigorously on behalf of the class," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), which depends on "a sharing of interests between representatives and absentees." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).

Here, the requirements of typicality and adequacy are not met. Because Plaintiff swears he did not visit the bestamericansavings.com website and provide his contact information, he cannot raise arguments on behalf of absent class members who did input their contact information into a website vendor used by Defendant. For example, in response to Defendant's consent defense, Plaintiff argues the consent language was not always present on the various websites, including bestamericansavings.com, and even if the consent language was present, it does not constitute valid consent under the TCPA. (Dkt. No. 68-1 at 19-24.)   But because Plaintiff never saw the bestamericasavings.com website, let alone inputted his contact information, he does not have standing to challenge whether the website disclosures were sufficient to provide Defendant consent to contact the absent class members. To put it another way, his attack on Defendant's consent defense—I did not visit the website and input my contact information—is not typical of the consent defense of absent class members who did visit the websites and provide their contact information.  And, for the same reason, he is not an adequate representative of such absent class members.

*Tan v. Grubhub, Inc.*, 2016 WL 4721439 (N.D. Cal. 2016), *aff'd sub nom. Lawson v.*

10

*Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021), is instructive. There, the named plaintiff was one of two individuals to opt out of an arbitration agreement, but every putative class member entered into the arbitration agreement. (*Id.* at *2.) The court held the named plaintiff's "claims are not typical of the putative class members, nor can he adequately represent the interests of those members" because he "would be unable to credibly make several procedural unconscionability arguments on behalf of the unnamed class members." *Id.* at *3. The Ninth Circuit affirmed, holding "[t]he district court correctly held Lawson could not satisfy the requirements in Rule 23(a) because he is neither typical of the class nor an adequate representative." *Lawson*, 13 F.4th at 913. Same here. As Plaintiff swears he did not provide the lead-generating website with his contact information, his consent defense is not typical of the putative class members who did and he likewise cannot adequately represent the interest of those class members who did.

A court in this District has reached the same conclusion in a similar TCPA context. In *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019), the named plaintiff moved to certify a class of persons whom defendant contacted one or more times, in violation of the TCPA. *Id.* at 984. There, as here, the named plaintiff had "never visited" the defendant's websites yet sought to challenge on a class-wide basis the websites' compliance with the TCPA's consent requirements. *Id.* at 987–988. The district court denied a motion for class certification on the grounds the plaintiff had not demonstrated typicality and adequacy because he asserted he did not visit the website through which the defendant claimed to have garnered consent to be contacted. The court reasoned while the plaintiff had offered "a plan for litigating the express consent issue on a class-wide basis, arguing lack of contract formation based upon the uniform failure of [the website vendor's] websites to comply with the 'signature' and 'clear and conspicuous disclosure' requirements under the TCPA, . . . he ha[d] not offered authority showing that he can properly litigate those issues if he himself never visited the . . . websites." *Id.* at 987-88. And *Lawson*, decided after *Berman*, is binding Ninth Circuit authority confirming that he could not. Again, same here.

In sum, Plaintiff has failed to show his challenge to Defendant's advanced and supported consent defense is typical of the class, Fed. R. Civ. P. 23(a)(3), or that he has standing to

11

"prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

### C. Predominance

Plaintiff has also not satisfied the predominance requirement of Rule 23(b)(3). Predominance "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Chinese Daily News*, 737 F.3d 538, 545 (9th Cir. 2013) (internal citation omitted). Given the evidence of putative class members' providing their contact information to the lead-generating websites, and Plaintiff's disavowal of having provided his contact information to the website, Plaintiff has failed to show that common issues predominate. Plaintiff does not proffer any method for determining on a class-wide basis whether a class member visited a website and provided contact information; so, answering that question will be individual for each class member.

*McKesson* and a subsequent case, *Trenz v. On-Line Administrators, Inc.*, 2020 WL 5823565 (C.D. Cal. 2020), illustrate this point. *McKesson* analyzed evidence of predominance with respect to multiple sub-classes and reached a different conclusion as to each sub-class. 829 F.3d at 932-33. *McKesson* found common issues predominated where, unlike here, a sub-class of people provided consented through two types of agreements that had "little or no variation." *Id.* at 932. By contrast, the court denied certification for a sub-class whose claims were "based on individual communications and personal relationships" because of "[t]he variation in such communications and relationships."[3] *Id.* Similarly, *Trenz* decertified a class of TCPA plaintiffs where, as here, the defendants' evidence showed class members provided consent through "privacy notices and other forms" and "the terms of the documents varied both among dealerships and over time." 2020 WL 5823545 at *7. Accordingly, the court found the defendants "advanced adequate evidence demonstrating that consent defenses … will require individualized inquiries," which is "a clear bar to class certification in TCPA matters." *Id.* at *7-8 (collecting cases).

---

[3] *McKesson* also remanded with respect to class members who "check[ed] a box" and "complet[ed] a written consent form" because the record was unclear on whether these forms were similar to those of other class members. 829 F.3d at 932-933.

United States District Court
Northern District of California

United States District Court
Northern District of California

In his Reply Memorandum, Plaintiff suggests for the first time that all of Defendant's leads may be fraudulent. Plaintiff's counsel claims he "sampled Acquire Crowd database" and now suspects a "web bot, employee, or contactors for the lead generator" copied customers' contact information into the bestamericansavings.com website. (Dkt. No. 81 at 10). The Court sustains Defendant's objections and **STRIKES** this argument and the supporting declaration of Bradley McFarland because Plaintiff failed to make this argument in his Complaint, opening brief, or in the prior briefing on class certification. (*See generally* Dkt. Nos. 23, 34, 61, 68.); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (parties may not "submit 'new' evidence in their reply without affording [the opposing party] an opportunity to respond. Such a result would be unfair.") But even if considered, Plaintiff's theory does not satisfy his burden of proving predominance of common questions by a preponderance of the evidence. Far from offering a plan for resolving the issue class-wide, Plaintiff concedes his bot theory "is speculation." (Dkt. No. 81 at 11.)

Accordingly, the Court finds the questions of law or fact common to class members do not predominate over any questions affecting only individual members, Plaintiff's claims and defenses are not "typical" of those of the class, and Plaintiff cannot "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3), (a)(4), (b)(3). Because these elements of Rule 23(a) and Rule 23(b) are not met, the Court declines to address the parties' arguments about numerosity and commonality.

### D. Leave to File a Further Class Certification Motion is Denied

The Court declines to grant leave to Plaintiff to file yet a third class certification motion. His first class certification motion failed because he himself proposed a fail-safe class which expressly involved a lack of consent, but then failed to address how consent could be decided on a class-wide basis. And before the Court granted Plaintiff leave to file a second class action motion, the Court specifically cautioned Plaintiff that certification would be challenging given that Plaintiff insists he did not visit the website which provided the lead information to Defendant. Yet, Plaintiff's subsequent motion for class certification did not grapple with that fact and how it affects his typicality and adequacy. Then in his Reply he improperly raised an entirely new theory—that all of the leads generated from bestamericansavings.com were fabricated. Even apart

13

from its tardiness, Plaintiff's suggestion is pure speculation unencumbered by evidence. So, the Court declines to give Plaintiff a third bite at the apple. Plaintiff may prosecute his own claim, but the Court in its discretion declines to appoint him to bring claims on behalf of others.

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for class certification. The Court sets a further case management conference for December 3, 2025 at 2:00 p.m. via Zoom video. An updated joint case management conference statement is due one week in advance.

**IT IS SO ORDERED.**

Dated: October 21, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

14